UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
-----------------------------X
                             :
JOHN CHRISTOPHER BARLETTA     :    Civil No. 3:22CV01110(SALM)
                             :
v.                            :
                             :
COMMISSIONER ANGEL QUIROS     :
                             :    March 29, 2023
-----------------------------X
```

RULING ON MOTION TO DISMISS [Doc. #26]

Self-represented Plaintiff John Christopher Barletta ("Barletta"), a sentenced inmate currently confined at Garner Correctional Institution ("Garner"),[1] brings this action pursuant to 42 U.S.C. §1983, alleging that his confinement in various forms of segregation from 1999 through 2021 violated the Fifth, Eighth, and Fourteenth Amendments to the United States

---

[1] The Court may take judicial notice of matters of public record. See, e.g., Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006); United States v. Rivera, 466 F. Supp. 3d 310, 313 (D. Conn. 2020) (taking judicial notice of BOP inmate location information); Ligon v. Doherty, 208 F. Supp. 2d 384, 386 (E.D.N.Y. 2002) (taking judicial notice of state prison website inmate location information). The Court takes judicial notice of the Connecticut DOC website, which reflects that Barletta was sentenced to a term of imprisonment that has not expired, and that he is held at Garner. See http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=219324 (last visited Mar. 25, 2023).

Constitution. See Doc. #1 at 1.[2] The Court issued an Initial
Review Order pursuant to 28 U.S.C. §1915A on October 11, 2022,
permitting the Complaint to proceed to service of process only
as to Barletta's Eighth Amendment conditions-of-confinement
claim and his Fourteenth Amendment procedural due process claim
against Defendant Angel Quiros ("Quiros"), Commissioner of the
Connecticut Department of Correction ("DOC"), in his individual
capacity for money damages. See Doc. #16 at 8.

Quiros has filed a motion to dismiss the Complaint, along
with a supporting memorandum. See Docs. #26, #26-1. Barletta
filed a memorandum in opposition, see Doc. #28; Quiros filed a
reply, see Doc. #31; and Barletta filed a sur-reply, see Doc.
#36, which the Court accepted, see Doc. #37.

For the reasons set forth below, Quiros's Motion to Dismiss
[**Doc. #26**] is **GRANTED**. Barletta will be permitted leave to amend
the Complaint.

I.   <u>LEGAL STANDARDS ON MOTION TO DISMISS</u>

"To survive a motion to dismiss, a complaint must contain
sufficient factual matter, accepted as true, to state a claim to
relief that is plausible on its face." <u>Ashcroft v. Iqbal</u>, 556

---

[2] Throughout this Ruling, the Court cites to the page numbers
reflected in each document's ECF header, rather than any
pagination applied by the filing party.

U.S. 662, 678 (2009) (citation and quotation marks omitted);
accord Kaplan v. Lebanese Canadian Bank, SAL, 999 F.3d 842, 854
(2d Cir. 2021). In reviewing such a motion, the Court "must
accept as true all nonconclusory factual allegations in the
complaint and draw all reasonable inferences in the Plaintiffs'
favor." Kaplan, 999 F.3d at 854 (citations omitted).

"[W]hile this plausibility pleading standard is forgiving,
it is not toothless. It does not require [the Court] to credit
legal conclusions couched as factual allegations or naked
assertions devoid of further factual enhancement." Mandala v.
NTT Data, Inc., 975 F.3d 202, 207 (2d Cir. 2020) (citation and
quotation marks omitted). "A pleading that offers labels and
conclusions or a formulaic recitation of the elements of a cause
of action will not do." Iqbal, 556 U.S. at 678 (citation and
quotation marks omitted).

It is well established that "[p]ro se complaints 'must be
construed liberally and interpreted to raise the strongest
arguments that they suggest.'" Sykes v. Bank of Am., 723 F.3d
399, 403 (2d Cir. 2013) (quoting Triestman v. Fed. Bureau of
Prisons, 470 F.3d 471, 474 (2d Cir. 2006)). However, even self-
represented parties must satisfy the basic rules of pleading,
including the requirements of Rule 8. See, e.g., Wynder v.
McMahon, 360 F.3d 73, 79 n.11 (2d Cir. 2004) ("[T]he basic

3

requirements of Rule 8 apply to self-represented and counseled plaintiffs alike.").

When ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court "must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." Vengalattore v. Cornell Univ., 36 F.4th 87, 102 (2d Cir. 2022) (citation omitted). "Where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document integral to the complaint." DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010) (citation and quotation marks omitted).

The Court may take judicial notice of its own records, see TechnoMarine SA v. Giftports, Inc., 758 F.3d 493, 498-99 (2d Cir. 2014), as well as other "relevant matters of public record[,]" Giraldo v. Kessler, 694 F.3d 161, 164 (2d Cir. 2012); see also Mangiafico, 471 F.3d at 398.

## II.  **FACTUAL BACKGROUND**

### A.  **Allegations of the Complaint**

The Court accepts the following allegations of the

Complaint as true for purposes of this Ruling. Barletta contends
that "defendants illegally held me in segregation for 22 years
in supermax enviroments from March 23 1999 to December 20th
2021[.]" Doc. #1 at 3 (sic). He was released from segregation in
2021 because, "after being ignored by facility wardens [and]
defendant Dave Maiga of Population Management[,]" id. at 5,
Barletta contacted Governor Ned Lamont, whose office "told
[defendants] to get [Barletta] out of segregation[.]" Id.

Barletta concedes that he "was justifiably placed in
segregation for killing another prisoner[]" in 1999. Id. He
"admits his faults and recognizes his initial placement in
segregation as just[,]" and "is only challanging the lenth of
the time in segregation as illegal[.]" Id. (sic). Barletta
alleges that in 2009, when he was confined at Northern
Correctional Institution: "I was approved for advancement in the
Northern supermax phase progression to work my way out of
segregation." Id. at 4. However, Quiros, who was "then warden of
Northern denied me participation in the program, insted
reclassified me without any disciplinary charge, to 'special
needs segregation status.'" Id. (sic). "Defendant Quiros
reclassified me based on old out dated information in 2010 for
two incidents that happend 10-11 years ago at that time in 1999
and 2000." Id. (sic). Barletta "was moved from one segregation

status to another" and "stayed on in segregation till december 20th 2021[.]" Id. (sic).

During his time in segregation, Barletta did not receive any mental health treatment, even though he had been diagnosed with "multiple dangerous mental illness[es]." Doc. #1 at 5.

**B. Materials Submitted by the Parties**

Both parties have submitted materials outside of the Complaint with their briefing relating to the motion to dismiss.

Quiros attaches six documents to his motion, all of which are records of a prior action Barletta brought against Quiros in 2010. See Barletta v. Quiros, No. 3:10CV00939(AVC) (D. Conn.) (the "Prior Action"). Specifically, Quiros has submitted the following documents from the Prior Action: (1) the ruling granting Quiros's motion to dismiss, see Doc. #26-3; (2) the docket sheet, see Doc. #26-4; (3) the Amended Complaint, see Doc. #26-5; (4) Barletta's Local Rule 56(a)(1) Statement of Facts in support of his motion for summary judgment, see Doc. #26-6; (5) Barletta's memorandum of law in support of his motion for summary judgment, see Doc. #26-7; and (6) Barletta's motion to reopen the Prior Action, see Doc. #26-8.

Barletta has attached the following documents to his opposition to the motion to dismiss: (1) a Notification of Hearing dated January 27, 2010, indicating that DOC was

6

considering transitioning Barletta from Administrative Segregation to Special Needs Management status, see Doc. #28 at 14; (2) a "Special Needs Facility Management Plan" dated June 29, 2009, id. at 15; (3) a "Records Notification Form for Risk Reduction Earned Credit[,]" id. at 16; (4) a Notification of Hearing dated October 28, 2022, see id. at 17; (5) a copy of Executive Order No. 21-1 issued by Connecticut Governor Ned Lamont regarding "the use of isolated confinement[,]" id. at 19-21; (6) a copy of Connecticut Public Act No. 22-18, see id. at 22-44; (7) excerpts of filings in the Prior Action, see id. at 46-47, 50-55; (8) a two-page document that appears to have been intended for filing in the Prior Action, but bears no ECF header indicating that it was actually filed in the Prior Action, see id. at 48-49;[3] (9) a September 7, 2021, letter to Barletta from Director of Offender Classification and Population Management D. Maiga, see id. at 57; and (10) DOC documents, including grievances and grievance responses, concerning Barletta's security status dated from December 17, 2009, through February

---

[3] This document, entitled "Plaintiff's Memorandum in Opposition to Defendants Opposition for Preliminary Injunctive Relief[,]" lacks an ECF header indicating that it was filed in the Prior Action. See Doc. #28 at 48-49 (sic). Upon review, it appears to be an unfiled, typed version of a document that was filed in handwritten form in the Prior Action on December 17, 2012. See Prior Action Doc. #80.

8, 2011, see id. at 59-65.

The documents submitted by the parties fall into three
categories: (1) documents of which the Court may take judicial
notice; (2) documents that may be considered by the Court
because they are integral to the Complaint; and (3) documents
the Court may not consider at the motion to dismiss stage.
Neither party has contested the authenticity of any document
submitted or made any argument regarding the propriety of the
Court's consideration of any document.

### 1.   Judicial Notice

At the motion-to-dismiss stage, the Court may consider
documents of which it takes judicial notice. See Vengalattore,
36 F.4th at 102. The Court finds that it may take judicial
notice of any document that is part of the official court record
in the Prior Action. See, e.g., Rothman v. Gregor, 220 F.3d 81,
92 (2d Cir. 2000) (taking judicial notice of complaint in
related action). Accordingly, the Court takes judicial notice of
the following documents in the Prior Action, submitted by the
parties with their briefing: (1) the ruling granting Quiros's
motion to dismiss [Doc. #26-3]; (2) the docket sheet [Doc. #26-
4]; (3) the Amended Complaint [Doc. #26-5]; (4) Barletta's Local
Rule 56(a)(1) Statement of Facts in support of his motion for
summary judgment [Doc. #26-6]; (5) Barletta's memorandum of law

in support of his motion for summary judgment [Doc. #26-7]; (6)
Barletta's motion to reopen the Prior Action [Doc. #26-8]; and
(7) excerpts of certain filings in the Prior Action [Doc. #28 at
46-47 and 50-55].

The Court may take judicial notice of these materials
"without regard to the truth of their contents," Staehr v.
Hartford Fin. Servs. Grp., Inc., 547 F.3d 406, 425 (2d Cir.
2008), and only "to establish the fact of such litigation and
related filings." Glob. Network Commc'ns, Inc. v. City of New
York, 458 F.3d 150, 157 (2d Cir. 2006) (citation and quotation
marks omitted).

The Court may also take judicial notice of state
legislation and executive orders. See N.Y. State Rest. Ass'n v.
N.Y.C. Bd. of Health, 556 F.3d 114, 136 n.25 (2d Cir. 2009)
(taking judicial notice of enacted and introduced state
legislation); Connelly v. Komm, No. 3:20CV01060(JCH), 2021 WL
5359738, at *3 n.3 (D. Conn. Nov. 16, 2021) (taking judicial
notice of Connecticut Governor's executive orders). Accordingly,
the Court takes judicial notice of the following documents
attached to Barletta's opposition to the motion to dismiss: (1)
Executive Order No. 21-1 issued by Connecticut Governor Ned
Lamont [Doc. #28 at 19-21]; and (2) Connecticut Public Act No.
22-18 [Doc. #28 at 22-44].

2.    Documents Integral to the Complaint

A document is integral to a complaint "where the complaint 'relies heavily upon its terms and effect[.]'" DiFolco, 622 F.3d at 111 (quoting Mangiafico, 471 F.3d at 398); see also Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002) ("[A] plaintiff's reliance on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough."). "However, even if a document is integral to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document[,]" and "that there exist no material disputed issues of fact regarding the relevance of the document." DiFolco, 622 F.3d at 111 (citations and quotation marks omitted). "[M]erely alleging facts supported by the content of the documents does not render them 'integral' to the Complaint." Vail v. City of New York, 68 F. Supp. 3d 412, 421 (S.D.N.Y. 2014).

As noted above, Quiros has not objected to the Court's consideration of any document submitted by Barletta. The Court finds that three documents submitted by Barletta are sufficiently integral to the Complaint that they may be considered in connection with the motion to dismiss. First, the

10

Notification of Hearing dated January 27, 2010, underlies the proceedings that resulted in Barletta's Special Needs Management classification. See Doc. #28 at 14. It also states that Barletta was "placed on Administrative Segregation status on March 23, 1999 due to poor overall behavior which includes the murder of [his] cellmate." Id. Barletta appears to have relied on this document for the allegation that "Defendant Quiros reclassified me based on old outdated information in 2010 for two incidents that happend 10-11 years ago at that time in 1999 and 2000." Doc. #1 at 4 (sic).

Second, the Special Needs Facility Management Plan, which is dated June 29, 2009, reflects the recommendation of DOC's mental health personnel that Barletta be classified as Special Needs Management. See Doc. #28 at 15. Barletta appears to have relied on this document for the allegation that he was "moved from one segregation status to another based on old out dated information on June 29[,] 2009[.]" Doc. #1 at 4. This document also states: "Mr. Barletta is classified as a Mental Health 2 inmate, he must write to mental health staff for a talking therapy session. Additionally, Mental Health staff tour the facility 3 times a week where Mr. Barletta can check in if needed." Doc. #28 at 15. Barletta alleges in the Complaint that he was placed in segregation "without any mental health

treatment after being designated to suffer from multiple
dangerous mental illness[es.]" Doc. #1 at 5.

Third, the September 7, 2021, letter to Barletta from
Director of Offender Classification and Population Management D.
Maiga states: "This will acknowledge receipt of your
correspondence received by the Governor's office on August 25,
2021 concerning your request to have your special needs status
reviewed. Your correspondence was forwarded to my office for
review and response." Doc. #28 at 57. Barletta appears to have
relied on this document for the allegation: "On or about Sept.
7, 2021 the governors office contacted all named defendants and
told them to get me out of segregation after I told the governor
the facts that the state of Ct. has held me in seg from 1999 to
2021." Doc. #1 at 5 (sic).

It is a close call whether Barletta relied "on the terms
and effect of [these] document[s] in drafting the complaint[,]"
Chambers, 282 F.3d at 153, which would support a finding that
the documents are integral to the Complaint, or has "merely
alleg[ed] facts supported by the content of the documents[,]"
Vail, 68 F. Supp. 3d at 421, which is insufficient. Quiros has
not objected to the Court's consideration of these materials.
The Court is required to generously construe Barletta's
submissions, in light of his pro se status. See Sykes, 723 F.3d

at 403. Accordingly, the Court will consider these three
documents as integral to the Complaint. See Doc. #28 at 14, 15,
and 57.

### 3.   Documents Not Appropriate for Consideration at the Motion to Dismiss Stage

The Court will not consider the following documents at this
stage of the litigation: (1) a "Records Notification Form for
Risk Reduction Earned Credit" [Doc. #28 at 16]; (2) a
Notification of Hearing dated October 28, 2022 [Doc. #28 at 17];[4]
(3) a two-page document that appears to have been intended for
filing in the Prior Action, but was never actually filed in the
Prior Action [Doc. #28 at 48-49]; and (4) DOC documents,
including grievances and grievance responses concerning
Barletta's security status, dated from December 17, 2009,
through February 8, 2011 [Doc. #28 at 59-65].

These documents were not attached to, incorporated by
reference into, or otherwise integral to the allegations of the
Complaint. Although the documents contain information that
relates generally to Barletta's allegations that he has been
held in restrictive segregation for many years, the Complaint
does not "rel[y] heavily upon [the] terms and effect" of these

---

[4] Because this document was created after Barletta filed the
Complaint, he cannot have relied on it in drafting the
Complaint. See Chambers, 282 F.3d at 153.

documents such that they are "integral to the complaint."
DiFolco, 622 F.3d at 111 (citation and quotation marks omitted);
see also Pyatt v. Raymond, 462 F. App'x 22, 24 (2d. Cir. 2012)
(finding no error in district court's refusal to consider
documents attached to opposition to motion to dismiss which
"were not attached to or integrated into the complaint, or
incorporated therein[]").

**C.   Administrative Directive 9.4**

The Court also takes judicial notice of Connecticut DOC
Administrative Directive 9.4, Restrictive Status ("AD 9.4").[5]
Although not submitted by either party, AD 9.4 is a matter of
public record and is relevant to the allegations of the
Complaint. See Giraldo, 694 F.3d at 164; Rosa v. Cook, No.
3:22CV00865(SALM), 2022 WL 7517256, at *5 n.6 (D. Conn. Oct. 13,
2022) (taking judicial notice of AD 9.4). "The Administrative
Directives are written guidelines, promulgated pursuant to
Connecticut General Statutes §18-81, establishing the parameters
of operation for Connecticut correctional facilities." Nicholson
v. Murphy, No. 3:02CV01815(MRK), 2003 WL 22909876, at *7 n.2 (D.
Conn. Sept. 19, 2003). AD 9.4 provides the framework for

---

[5] State of Connecticut Department of Correction, Administrative
Directive 9.4 (June 16, 2016), https://portal.ct.gov/-
/media/DOC/Pdf/Ad/ad0904pdf.pdf.

managing inmates designated to various forms of confinement,

including Special Needs Management, which is defined as:

> A placement status for inmates who have demonstrated
> behavioral qualities either through the serious nature
> of their crime, behavior, or through reasonable belief
> that they pose a threat to the safety and security of
> staff, other inmates, themselves, or the public.

AD 9.4 at 3.[6] The policy states: "A classification hearing for

each inmate classified to Special Needs Management status shall

be held at a minimum of every six (6) months." Id. at 10. Review

by a mental health professional is required every 90 days. Id.

at 10-11. Hearings are conducted by a "Special Needs Management

Hearing Officer[,]" who provides a recommendation for decision

"by the Director of Offender Classification and Population

Management in consultation with the Deputy Commissioner of

Operations and Rehabilitative Services[.]" Id. at 10.

The version of AD 9.4 available on the Connecticut DOC

website has an effective date of June 16, 2016. A prior version

of AD 9.4, with an effective date of January 31, 2009, contains

substantially identical requirements to those discussed above.

---

[6] Barletta has described his placement as being in "special needs
segregation status[,]" Doc. #1 at 4, and Quiros does not contest
the use of that term. See generally Doc. #26-1; see also Doc.
#28 at 15 (describing Barletta's recommended placement in the
"Special Needs program"). The Court therefore presumes that the
"Special Needs Management" policy applies to Barletta.

See <u>Muhmmaud v. Murphy</u>, No. 3:08CV01199(VLB), Doc. #40-5 (D. Conn. Mar. 11, 2009) (copy of the prior version of AD 9.4 submitted with motion papers).

## III. <u>DISCUSSION</u>

Barletta's Complaint proceeds on two claims: a Fourteenth Amendment procedural due process claim based on his alleged misclassification as Special Needs Management status, and an Eighth Amendment conditions-of-confinement claim based on his long-term segregation. Quiros moves for dismissal of each claim based on timeliness and on <u>res judicata</u>. Quiros also moves for dismissal of the Eighth Amendment claim based on a failure to adequately allege Quiros's personal involvement.

### A.   **Fourteenth Amendment - Procedural Due Process**

#### 1.   <u>Statute of Limitations</u>

Quiros argues that the applicable three-year statute of limitations bars Barletta's procedural due process claim because the claim is based on Barletta's placement in "Special Needs Management" status in 2010. <u>See</u> Doc. #26-1 at 6-7; Doc. #1 at 4.

"Although the statute of limitations is ordinarily an affirmative defense that must be raised in the answer, a statute of limitations defense may be decided on a Rule 12(b)(6) motion if the defense appears on the face of the complaint." <u>Conn. Gen. Life Ins. Co. v. BioHealth Lab'ys, Inc.</u>, 988 F.3d 127, 131-32

(2d Cir. 2021) (citation and quotation marks omitted).

Congress did not prescribe a statute of limitations for Section 1983 claims, and therefore "the courts must borrow a state statute of limitations." Lounsbury v. Jeffries, 25 F.3d 131, 133 (2d Cir. 1994). Specifically, the Court borrows the "general or residual statute for personal injury actions." Owens v. Okure, 488 U.S. 235, 250 (1989). In Connecticut, that is the three-year statute of limitations set forth in Connecticut General Statutes §52-577. See Lounsbury, 25 F.3d at 134. Although the limitations period is borrowed from state law, "[f]ederal law determines when a section 1983 cause of action accrues, and ... that accrual occurs when the plaintiff knows or has reason to know of the injury which is the basis of his action." Hogan v. Fischer, 738 F.3d 509, 518 (2d Cir. 2013) (citation and quotation marks omitted).

As pled, Barletta's procedural due process claim is barred by the statute of limitations. The Complaint alleges that the misclassification occurred in 2010, more than three years before the filing of the Complaint. See Doc. #1 at 4 ("Defendant Quiros reclassified me based on old outdated information in 2010 for two incidents that happened 10-11 years ago at that time in 1999 and 2000." (emphasis added)). Barletta does not contest this argument in his briefing. Indeed, Barletta seems to abandon any

claim that his alleged 2010 misclassification is, on its own, the basis for his Fourteenth Amendment procedural due process claim. Instead, he appears to shift the theory on which this claim proceeds, arguing that "plaintiff's long term segregation is the only issue being challenged in this case." Doc. #28 at 4.

While the Complaint focuses on Barletta's original classification, in his briefing Barletta makes arguments regarding periodic review of his status. For instance, Barletta argues: "As Commissioner[,] Angel Quiros has the duty and respon[s]ibility to do high profile inmate reviews ever[y] 6 months for prisoners on administrative, or special needs segregation[.]" Doc. #28 at 10. Barletta states that Quiros would "have to sign off on my continued place-ment in segregation every 6 months after he stopped being warden and became commissioner." Id. (sic). "Unless Commissioner Quiros was totally indiffrent to what he was signing, just rubber stamping my continued segregation without reading it, meaning I never got a fair and meaningful review or hearing. Then, Defendant Quiros signed off on my continued seg placement for years after he knew I was alredy in seg for 11 years as of 2009." Id. at 11 (sic).

It may be that Barletta could assert a procedural due process claim based on the denial of meaningful periodic review of his segregation. See Proctor v. LeClaire, 846 F.3d 597, 614

(2d Cir. 2017) ("[P]eriodic reviews of Ad Seg satisfy procedural due process only when they are meaningful. Reviews are meaningful only when they involve real evaluations of the administrative justification for confinement, they consider all of the relevant evidence that bears on whether that administrative justification remains valid, and they ensure that Ad Seg is used as neither a form of punishment nor a pretext for indefinite confinement."). But Barletta has not asserted such a claim in his Complaint. Rather, these arguments appear only in Barletta's briefing.

The Fourteenth Amendment claim set forth in the Complaint is based on Barletta's alleged misclassification in 2010. That claim is time-barred for the reasons discussed above, and even a self-represented plaintiff may not amend his Complaint through an opposition to a motion to dismiss. See Tyus v. Newton, No. 3:13CV01486(SRU), 2015 WL 1471643, at *5 (D. Conn. Mar. 31, 2015); Baldwin v. Arnone, No. 3:12CV00243(JCH), 2012 WL 3730010, at *3 (D. Conn. June 20, 2012) ("The plaintiff cannot ... amend his Complaint through a memorandum.").

Accordingly, Quiros's motion to dismiss on this basis is **GRANTED**. However, this dismissal is **without prejudice** to the extent that Barletta seeks leave to amend in order to allege a claim based on the denial of meaningful periodic review or

another theory.

        2.   Res Judicata

     Quiros also argues that Barletta's Fourteenth Amendment claim is barred, in whole or in part, by res judicata. Specifically, Quiros contends that Barletta's claim is barred because "his classification was one of the facts he was claiming [in the Prior Action], and if not clearly brought, it could have been brought at that time." Doc. #26-1 at 10.

     "Under the doctrine of res judicata, or claim preclusion, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." TechnoMarine, 758 F.3d at 499 (citation and quotation marks omitted). Whether a claim could have been raised in a prior action "depends in part on whether the same transaction or connected series of transactions is at issue, whether the same evidence is needed to support both claims, and whether the facts essential to the second were present in the first." Id. (citation and quotation marks omitted).

     "The burden is on the party seeking to invoke res judicata to prove that the doctrine bars the second action." Brown Media Corp. v. K&L Gates, LLP, 854 F.3d 150, 157 (2d Cir. 2017). The operative date for determining what claims could have been

brought for purposes of res judicata is the date of the original
complaint in the Prior Action, rather than any amended
complaint. See Curtis v. Citibank, N.A., 226 F.3d 133, 139 (2d.
Cir. 2000) ("The crucial date is the date the complaint was
filed. The plaintiff has no continuing obligation to file
amendments to the complaint to stay abreast of subsequent
events; plaintiff may simply bring a later suit on those later-
arising claims.").

    In light of the Court's conclusion that Barletta's
Fourteenth Amendment claim, as pled, is time-barred, the Court
need not resolve whether it would separately be barred by res
judicata. However, the Court pauses to note that the record
before it, including the materials submitted by Quiros, would
not permit the Court to make a finding of res judicata. Quiros
acknowledges that the Amended Complaint in the Prior Action does
not include a claim based on Barletta's classification as
Special Needs Management. See generally Doc. #26-5; see also
Doc. #26-1 at 10 (noting that the Amended Complaint "did not
specifically mention the plaintiff's classification as special
needs[]"). Instead, Quiros relies on a memorandum of law and
statement of material facts submitted with Barletta's motion for
summary judgment in the Prior Action. See Doc. #26-1 at 11. Any
reference to Barletta's classification in his motion papers

could not, and did not, amend the complaint in the Prior Action. See Wright v. Ernst & Young LLP, 152 F.3d 169, 178 (2d Cir. 1998). Accordingly, these documents do not show that Barletta actually brought a claim based on his Special Needs Management classification in the Prior Action.

Nor has Quiros shown that such a claim could have been brought as of June 16, 2010, when the Prior Action was filed. The Complaint alleges that Barletta was "reclassified" in 2010, Doc. #1 at 4, but the record does not reflect the exact date of the reclassification. As discussed above, the Court may not rely on any judicially noticed documents from the Prior Action for the truth of the date of Barletta's Special Needs Management classification, and even if it could, the date is not clearly set forth in any of those documents. The Court has not accepted as integral to the Complaint any document revealing the date that Barletta was formally classified as Special Needs Management status. Because on this record it is not possible to determine whether the classification occurred before June 16, 2010, which would be necessary for res judicata to apply, the Court cannot conclude that res judicata bars the claim.

**B.   Eighth Amendment - Conditions of Confinement**

1.   Statute of Limitations

Quiros argues that the statute of limitations bars "any

22

damages flowing from [Barletta's] confinement that occurred
prior to September 1, 2019[,]" that is, three years before the
Complaint was filed. Doc. #26-1 at 7; see also id. at 7-8.

This argument is without merit. The continuing violation
doctrine applies to Eighth Amendment claims based on long-term
segregation. "An Eighth Amendment claim predicated on"
administrative segregation "typically accrues only after an
inmate has been confined in [segregation] for a prolonged period
of time. ... It follows that the continuing violation doctrine
should be applied to an Eighth Amendment claim of this nature."
Gonzalez v. Hasty, 802 F.3d 212, 224 (2d Cir. 2015). Under the
continuing violation doctrine, "the limitations period begins to
run when the defendant has engaged in enough activity to make
out an actionable claim[,]" id. at 220 (citation and quotation
marks omitted), but the "entire Eighth Amendment claim will be
timely as long as the violation of rights continued past the
cutoff date[,]" id. at 224 (emphasis added). The Complaint
alleges that Barletta remained in segregation until 2021. See
Doc. #1 at 5. Therefore, the Eighth Amendment claim is not
barred, in whole or in part, by the statute of limitations, and
the motion to dismiss on this basis is **DENIED**.

2.   Res Judicata

Quiros recognizes that res judicata could not bar

23

Barletta's conditions-of-confinement claim in its entirety. At the time the original complaint was filed in the Prior Action on June 16, 2010, Barletta could not have sued for events that had not yet occurred -- that is, his alleged continued segregation until 2021. Instead, Quiros argues that because Barletta's segregation status was "an [a]spect" of the Prior Action, any claims concerning his segregation status prior to June 16, 2010, are barred by res judicata. Doc. #31 at 2.

To the extent that Barletta's segregation was an "aspect" of the Prior Action, that is insufficient to trigger res judicata. As discussed previously, the question is whether Barletta did bring or could have brought this claim. The Amended Complaint in the Prior Action includes references to Barletta's placement in segregation in 2009, but those references are in the context of allegations regarding discriminatory and retaliatory treatment. See Doc. #26-5 at 3, ¶23 (alleging that Barletta was "placed on Administrative Segregation with no disciplinary infractions, no re-admittance hearing nor any justification for said placement"); id. at 5, ¶36 ("Plaintiff contacted DOC Population managment on September 12, 2009, concerning being placed on Admin. Segregation status without a hearing, no infractions or any justification." (sic)); id. at 7, ¶55 ("Plaintiff continued to grieve the discrimination, mail

24

tampering, religion, religious literature, arbitrary placement on A.S. status, etc."); id. at 9, ¶71 ("I am placed on indefinite punitive segregation conditions which are atypical and a significant hardship for no other reason than my religious, social and political past.").

Barletta did not bring a claim in the Prior Action based on the amount of time he had been held in segregation.[7] And although Barletta did make arguments based on the length of his segregation in his motion for summary judgment in the Prior Action, that would not support a finding of res judicata for the reasons discussed above. See Proctor, 715 F.3d at 412; see also Doc. #26-7 at 5 ("The plaintiff has been held over 1,034 days. The defendants have held the plaintiff on administrative segregation, then placed him on 'special needs status' which is a thinly veiled long term adminastration seg. program, with no program, criteria, to work one self off said status." (sic)).

---

[7] The final sentence of the Fourth Count of the Amended Complaint, labeled as "Violation of the Plaintiff's Due Process Rights under the Fourteenth Amendment for arbitrary placement on Administrative Seg Status[,]" reads: "The circumventing of policies and practices described above to violate the Plaintiff's constitutional rights to place him in atypical and significant hardship for retaliatory purposes violated his Eighth and Fourteenth Amendment rights." Doc. #26-5 at 10. In granting dismissal, the Court in the Prior Action construed this count as asserting solely a Fourteenth Amendment claim, not an Eighth Amendment claim. See Doc. #26-3 at 6, 8-9.

Although Barletta did not bring this conditions-of-confinement claim in the Prior Action, res judicata "precludes not only litigation of claims raised and adjudicated in a prior litigation between the parties (and their privies), but also of claims that might have been raised in the prior litigation but were not." Marcel Fashions Grp., Inc. v. Lucky Brand Dungarees, Inc., 779 F.3d 102, 108 (2d Cir. 2015). Whether Barletta could have raised an Eighth Amendment claim based on the length of time he had been held in segregation depends on whether such a claim had accrued in 2010, when the Prior Action was filed. Accrual of a conditions-of-confinement claim "is a question of fact determinable only by a close assessment of the conditions to which [plaintiff] was subjected as a function of the length of that confinement." Gonzalez, 802 F.3d at 224. And, of course, any portion of Barletta's claim that accrued after the Prior Action would not be barred.

> [C]ourts must be mindful that a claim "arising subsequent to a prior action ... [is] not barred by res judicata" even if the new claim is "premised on facts representing a continuance of the same 'course of conduct.'" Storey v. Cello Holdings, L.L.C., 347 F.3d 370, 383 (2d Cir. 2003). This is because, as the Supreme Court has directed:
>
>> That both suits involved 'essentially the same course of wrongful conduct' is not decisive. Such a course of conduct ... may frequently give rise to more than a single cause of action.... While the [prior] judgment

26

> precludes recovery on claims arising prior to
> its entry, it cannot be given the effect of
> extinguishing claims which did not even then
> exist and which could not possibly have been
> sued upon in the previous case.

Lawlor v. Nat'l Screen Serv. Corp., 349 U.S. 322, 327–
28 (1955).

...

> When a subsequent action involves a claim over "ongoing
> conduct" and it relies on facts that occurred both before
> and after the earlier action commenced, claim preclusion
> will not bar a suit, we have said, "based upon legally
> significant acts occurring after the filing of a prior
> suit that was itself based upon earlier acts." Waldman
> v. Village of Kiryas Joel, 207 F.3d 105, 113 (2d Cir.
> 2000).

TechnoMarine, 758 F.3d at 499–501.

Determining the accrual date for this type of conditions-
of-confinement claim entails a fact-intensive inquiry. That
inquiry cannot be performed at this stage of the litigation for
multiple reasons, including that Barletta alleges having been
subjected to different statuses during his confinement, which
may impact the accrual date of his claim. See Doc. #1 at 4 ("I
was moved from one segregation status to another[.]").
Accordingly, the Court cannot conclude at this stage that
Barletta could have raised this conditions-of-confinement claim
in the Prior Action. Furthermore, even if Barletta could have
raised such a claim in 2010, that would not be a basis for
dismissing this claim, for the reasons stated in TechnoMarine,

27

758 F.3d at 499–501. It would, at most, affect the extent of Barletta's recovery. See id. at 499 (observing that a prior judgment "precludes recovery on claims arising prior to its entry[]" (quoting Lawlor, 349 U.S. at 328)).[8]

Accordingly, Quiros's motion to dismiss on this basis is **DENIED**.

### 3.   Personal Involvement

Finally, Quiros argues that the Complaint fails to plead his personal involvement in the violation of Barletta's Eighth Amendment rights, as required to recover damages under Section 1983. See Doc. #26-1 at 12–13; see also Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) ("[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under §1983." (citation and quotation marks omitted)). Quiros contends: "[T]here are no allegations concerning specific actions taken by the defendant after September 1, 2019, or specific actions taken at any time that kept the plaintiff on special needs status or in isolation."

---

[8] Although the continuing violation doctrine makes Barletta's entire Eighth Amendment claim timely, it does not preclude a portion of his claim from being barred by res judicata. See Staten v. City of New York, 653 F. App'x 78, 79 (2d Cir. 2016) ("[T]he continuing violation doctrine applies to timeliness, not claim preclusion.").

Doc. #26-1 at 12.[9]

The Complaint alleges: "Defendant Angel Quiros put me in segregation and special needs segregation from March 23 1999 till December 20th 2021 knowing full well indefinite long term segregation is illegal, showing complete indifference to prisoners mental, emotional, and physical state of mind and well being." Doc. #1 at 3 (sic). It does not, however, allege facts showing that Quiros was personally involved in Barletta's ongoing segregation after the initial Special Needs Management classification decision. The purely conclusory allegation of the Complaint is insufficient. See Balintulo v. Ford Motor Co., 796 F.3d 160, 170 (2d Cir. 2015) ("A complaint will not 'suffice if it tenders naked assertions devoid of further factual enhancement.'" (quoting Iqbal, 556 U.S. at 678)). Barletta may

---

[9] Quiros also argues, primarily in reply, that Barletta was confined outside of Connecticut for some time, and therefore Quiros, "who is an employee of the Connecticut Department of Correction, was not personally involved in the plaintiff's conditions of confinement during that time." Doc. #31 at 1-2. The Complaint does not allege facts regarding Barletta's location during the relevant time period, and the Court cannot resolve this question at the motion to dismiss stage. Furthermore, even if Barletta were confined outside of Connecticut, that would not necessarily mean that Quiros was not "personally involved" in any constitutional violation. The Interstate Corrections Compact, which governs the transfer of Connecticut inmates to other states, provides: "Inmates confined in an institution pursuant to the terms of this compact shall at all times be subject to the jurisdiction of the sending state[.]" Conn. Gen. Stat. §18-106.

not rely solely on Quiros's supervisory role as Commissioner to
establish his personal involvement for purposes of Section 1983.
See Tangreti v. Bachmann, 983 F.3d 609, 619 (2d. Cir. 2020)
("[The plaintiff] must ... establish that [the defendant]
violated the Eighth Amendment by [the defendant's] own conduct,
not by reason of [the defendant's] supervision of others who
committed the violation.").

As noted earlier, Barletta argues in briefing that "Quiros
has the duty and responcibility to do High profile inmate
reviews ever 6 months for prisoners on Administrative, or
special needs segregation[,]" and that he would "have to sign
off on my continued place-ment in segregation every 6 months
after he stopped being Warden and became Commissioner." Doc. #28
at 10 (sic). AD 9.4 requires that "[a] classification hearing
for each inmate classified to Special Needs Management status
shall be held at a minimum of every six (6) months." AD 9.4 at
10. The direct involvement of the Commissioner is contemplated
by the directive: "Release from Special Needs Management status
shall be determined by the Director of Offender Classification
and Population Management in consultation with the Commissioner
or designee[.]" Id. at 11 (emphasis added).

Again, Barletta has made assertions in his briefing that
are not set out in the actual allegations of his Complaint. The

30

Complaint, as pled, does not assert claims based on any actions by Quiros in connection with the conduct of (or failure to conduct) any periodic reviews of Barletta's segregation status. Accordingly, the motion to dismiss on this basis is **GRANTED.**

IV. <u>**CONCLUSION**</u>

For the reasons stated, defendant's Motion to Dismiss [**Doc. #26**] is **GRANTED**, without prejudice.

The Court previously afforded plaintiff an opportunity to amend his Complaint following the Court's Initial Review Order. <u>See</u> Doc. #16 at 9. Plaintiff expressly declined, opting instead to proceed to service of process on Quiros. <u>See</u> Doc. #19 at 1. Plaintiff also could have amended the Complaint as of right in response to defendant's motion to dismiss, but he did not do so. <u>See</u> Fed. R. Civ. P. 15(a)(1). Nonetheless, in an abundance of caution, in light of plaintiff's self-represented status, and because this litigation is at a relatively early stage, the Court will permit plaintiff an additional opportunity to amend his Complaint.

Plaintiff may file an Amended Complaint addressing the defects identified in this Ruling, on or before **May 1, 2023. If plaintiff fails to file an Amended Complaint by this deadline, the Court will close this case.** Plaintiff is advised that any Amended Complaint will completely replace the prior complaint in

the action. No portion of the original Complaint [Doc. #1] will be incorporated into the Amended Complaint by reference, or considered by the Court.

Plaintiff previously sought the appointment of counsel in this matter. See Doc. #3. The motion was denied, because plaintiff had not demonstrated that he had made any effort to secure counsel on his own. See Doc. #17. Plaintiff may renew his motion for appointment of counsel if he is able to demonstrate that he has attempted to obtain representation on his own, after the entry of the October 12, 2022, Order.

It is so ordered at Bridgeport, Connecticut, this 29th day of March, 2023.

/s/
_____
HON. SARAH A. L. MERRIAM
UNITED STATES CIRCUIT JUDGE
Sitting by Designation